IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NDIDI NWAGBO;<br><br>Defendant. | CRIMINAL ACTION FILE NO.<br>1:19-CR-223-WMR-LTW-1 |

### ORDER

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R") [Doc. 95], which recommends that Defendant's first Motion to Suppress be granted in part and denied in part. [Doc. 53]. It further recommends that Defendant's second Motion to Suppress be denied. [Doc. 54]. Defendant has timely filed objections to the R&R. [Doc. 98].

### I.   LEGAL STANDARD

In reviewing the R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009)

1

(quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted); *see also Macort v. Prem, Inc.,* 208 Fed.Appx. 781, 784 (11th Cir. 2006) ("It is critical that the objection be sufficiently specific and not a general objection to the report."). If no specific objections are made or no objections are made at all, "the appropriate standard of review for the report and recommendation is clear error." *Lattimore v. Bank of Am., N.A.*, No. 1:12-CV-1776-CAP-JSA, 2014 WL 11456272, at *1 (N.D. Ga. Feb. 10, 2014), *aff'd sub nom. Lattimore v. Bank of Am. Home Loans*, 591 F. App'x 693 (11th Cir. 2015). After review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II.  BACKGROUND

In 2019, Defendant Ndidi Nwagbo, among others, was indicted and charged with two counts for aiding and abetting the making of fictitious statements to a licensed firearms dealer on separate gun applications. [Doc. 9]. On October 10, 2019, Defendant filed his first Motion to Suppress, claiming that the presentation of a single photo to one witness, Ms. Robbie Ann Weeks, for identification was unreliable and should be excluded. [Doc. 53 at 2].  In addition, he argues that the procedure utilized for eyewitness, Ms. Dickerson, to identify Defendant from a photo array was unduly suggestive and should therefore also be excluded. [*Id.*]. Then, on November 8, 2019, Defendant filed a second Motion to Suppress, seeking

to exclude statements he made to officers after he claims he invoked his *Miranda* rights. [Doc. 54 at 1-2]. Specifically, he argues that while he was being transported to an office to be further questioned, he had invoked his right to remain silent. [Doc. 73 at 1]. Once he reached the office for additional questioning, Defendant argues that he was not given new *Miranda* warnings and, thus, any statements he made should be suppressed. [Doc. 73 at 1]. The Magistrate Court held a hearing on both Motions and issued the R&R that is presently before this Court. [Doc. 95].

### The Report & Recommendation

In the R&R, the Magistrate Judge concluded that Ms. Weeks's identification of Defendant was unduly suggestive and that the Government failed to carry its burden; thus, the Court recommended that the identification be suppressed. [Doc. 95 at 13-14]. For the identification made by Ms. Dickerson, however, the Magistrate Judge found that the process was not unduly suggestive, nor was there a "very substantial likelihood of irreparable and misidentification." [Doc. 95 at 20]. Thus, it was recommended that Defendant's first Motion to Suppress be granted in part and denied in part.

Regarding the second Motion to Suppress, the Magistrate Judge concluded that the statements Defendant made to the transporting officers should not be suppressed because he never unambiguously invoked his right to remain silent. [Doc. 95 at 23]. Further, the Magistrate Judge determined that the *Miranda* warning

initially given to Defendant in the transportation vehicle was sufficient and that he did not need to receive a new warning upon questioning by different agents in the office setting. [Doc. 95 at 28]. The Magistrate Judge consequently recommended that the second Motion to Suppress be denied. [Doc. 54]. Defendant raises several objections to the R&R. [Doc. 98].

### III.  DISCUSSION

#### Defendant's General Factual Objections

Defendant first lodges two general objections about the factual findings of the Magistrate Judge, namely that there was no record testimony that Mr. Nwagbo "unloaded ten guns they had purchased" or that Robbie Ann Weeks "told agents that [he] had previously dropped off guns at her home." [Doc. 98 at 1-2 (quoting Doc. 95 at 3, 5)]. With these objections, Defendant appears simply to be requesting that this Court correct the factual record as presented in the R&R. Although the transcript may more accurately reflect the facts as presented in Defendant's first objection, this factual detail is not necessarily related to the Motions to Suppress and thus does not impact this Court's ultimate ruling. Additionally, the Court finds no inconsistencies in the Magistrate Judge's reporting of the facts about Ms. Weeks's statements. Thus, these objections are overruled.

**Defendant's Motion to Suppress Eyewitness Identifications**

Next, Defendant objects more specifically to the Magistrate Judge's findings as related to the Motion to Suppress the eyewitness identifications. First, Defendant claims that the Magistrate Judge's finding—"that the photo array shown to Caitlin Dickerson reflects individuals with 'roughly the same characteristics' as Mr. Nwagbo"—is incorrect. [Doc. 98 at 2]. This exact point was argued in his opening brief and reply earlier in the litigation. [Doc. 98 at 2]. Additionally, Defendant argues that the Magistrate Judge erred by concluding that the procedures used in securing an identification from Ms. Dickerson were not unduly suggestive. [Doc. 98 at 3]. This Court engages in a de novo review based on Defendant's specific objections.

A defendant may be successful in excluding evidence if it "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990). For identifications, specifically, "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). If the identifications "are so unreliable as to violate due process," they may be excluded. *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987).

To do so, Defendant must first prove that the out-of-court photo identification procedures used were unduly suggestive. *Id*. Then, once Defendant has met its burden, the Government must demonstrate that the suggestive procedure did not

create a substantial risk of misidentification. *Id.*; *United States v. Whatley*, 719 F.3d 1206, 1215 (11th Cir. 2013). The Court may consider several factors in determining whether there is a substantial risk of misidentification, such as the witness's opportunity to view the criminal, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty exhibited by the witness, and the length of time between the identification and the crime. *Whatley*, 719 F.3d at 1215.

Defendant claims that the photo array itself was unduly suggestive as presented to Ms. Dickerson because it "did not 'resemble' Mr. Nwagbo" and that his "photograph was different from all five others." [Doc. 87 at 4]. He claims that he was the only individual pictured wearing clothing that covered his neck and with a thick beard. [Doc. 73 at 7]. The photographs chosen, however, do not need to be "precise matches." *United States v. Hood*, No. CV117CR421SCJLTW, 2018 WL 7286179, at *8 (N.D. Ga. Oct. 25, 2018), *report and recommendation adopted*, No. 1:17-CR-421-SCJ, 2019 WL 169144 (N.D. Ga. Jan. 11, 2019). For example, the Eleventh Circuit has noted that a lineup is not necessarily impermissibly suggestive by having an individual's photograph that is "of a different race or ethnic group from others placed in a lineup." *Williams*, 826 F.2d at 1021. In other words, as long as "the other individuals in the lineup had roughly the same characteristics and features as the accused," the lineup procedure is usually sufficient. *Id.*

Here, the lineup included individuals with roughly the same characteristics as Defendant. All were of the same race, and most of the individuals had a similar skin tone as Defendant. [Doc. 98 at 19]. Others had similar hairstyles and facial hair to that of Defendant. [Doc. 98 at 19]. And, no other aspects of the identification procedures that Defendant points out or that this Court can find were unduly suggestive. That Ms. Dickerson was not shown the pictures in exact accordance with the Department of Justice's policy does not necessarily change the result.

Since the Court finds that the procedure itself was not unduly suggestive, the burden does not shift to the Government to prove that a substantial risk of misidentification existed. Nonetheless, the factors demonstrate that there was no substantial risk in this case. Ms. Dickerson interacted with Defendant two times close in proximity to the identification. She spent a night in a hotel room with Defendant a few months before the interview, and Defendant gave her cash in person directing her as to which firearms he wanted to purchase. [Doc. 73 at 8]. Thus, she was not a "casual or passing observer," but rather had direct and lengthy interactions with Defendant. *Manson v. Brathwaite*, 432 U.S. 98, 115 (1977). She also identified Defendant with certainty as she "immediately directed her gaze to Mr. Nwagbo's photograph and said, 'That's him, that's Big D.'" [Doc. 73 at 8]. Thus, based on a totality of the circumstances, this Court agrees with the Magistrate Court that the

7

procedures were not unduly suggestive and that there was not a substantial risk of misidentification.

## **Defendant's Motion to Suppress Statements**

Contrary to the Magistrate Judge's R&R, Defendant contends that, while he was being transported to the offices in Buffalo, New York, he invoked his right to remain silent by stating that he "was willing to talk" but "didn't want to talk too much about the case." [Doc. 73 at 4; Doc. 95 at 23 (quoting Transcript at 87)]. Further, during the discussion, Defendant "revealed that he had received a phone call to help a friend, which prompted him to leave the apartment," and then stated, "I don't want to say any more than that." [Doc. 73 at 5]. The Magistrate Judge concluded that this attempt at an invocation of the right to remain silent was only made in relation to the discussion about why he left his mother's house; but, Defendant contends it was not so "topically limited." [Doc. 98 at 7]. He also objects to the Magistrate Judge's finding that the law enforcement officers did not "dilute the effectiveness" of the initial *Miranda* warning; instead, Defendant claims that the officers' conduct "minimized the import and effect of the initial warning" and that he should have been given a new warning when he reached the Buffalo office. [Doc. 98 at 7].

When a suspect who is being interrogated and who has been given *Miranda* warnings[1] states that "he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966). However, "the officers have no obligation to stop questioning him" if the request is not "unambiguous or unequivocal." *Davis v. United States*, 512 U.S. 452, 461-62 (1994); *United States v. Ochoa*, 941 F.3d 1074, 1098 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2553, 206 L. Ed. 2d 488 (2020). That is, the invocation must be such "that a reasonable police officer in the circumstances would understand the statement *to be* a request' to exercise his right to remain silent and terminate the interrogation, not that it *might be* a request to remain silent." *Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1194 (11th Cir. 2012).

Here, the Court finds that Defendant's request to the transporting officers in this case was ambiguous. Defendant's statement that "he didn't want to talk too much" about the case is not a sufficiently clear request to remain silent. For example, the transporting officers could have reasonably interpreted that to mean that Defendant was willing to talk about the case for some time but just not the whole time. But, it is not clear— to anyone other than Defendant himself—how much

---

[1] It is undisputed that Defendant was in custody when arrested, handcuffed, and transported by three law enforcement officers to ATF's Buffalo, New York office. It is also undisputed that the officers read Defendant his *Miranda* rights at this time.

9

would be considered "too much." This level of ambiguity demonstrates that no unequivocal invocation of his right to remain silent occurred.

Defendant also did not unequivocally invoke his right to remain silent by stating that he "did not want to say anymore" when asked about a specific event related to his case. The record is clear that when Defendant made this statement, he and the officers were discussing why Defendant had left the apartment to go help one of his friends. [Doc. 73 at 4]. In other words, his statement was "made in response to questions about specific, discrete details of the crime, not general questions about the crime itself." *Owen*, 686 F.3d at 1193. Thus, based on his statement, it would have been reasonable for the officers to believe Defendant no longer wanted to talk about that specific aspect of the crime, not that he was invoking a complete right to remain silent. Since the request was subject to differing interpretations, it was ambiguous at best. *See also United States v. Acosta*, 363 F.3d 1141, 1155 (11th Cir. 2004) (concluding that when there are reasonable and competing interpretations, with one being that Defendant did not invoke his right to remain silent, the invocation is ambiguous).

Therefore, the Court concludes that because Defendant did not unequivocally invoke the right to remain silent, the transporting officers were under no obligation to cease their questioning. Of course, it likely would have been "good police

practice" for the officers to recognize the ambiguity in Defendant's statements and clarify his request. *Davis*, 512 U.S. at 461. But, the law does not require them to do so. *Acosta*, 363 F.3d at 1152 ("If the statement is ambiguous or equivocal, then the police have no duty to clarify the suspect's intent."). The statements made to the transporting officers therefore should not be excluded or suppressed in this case.

As for Defendant's statements made once at the Buffalo office, Defendant claims that the initial warning provided to him in the vehicle was not sufficient for the second interrogation. Specifically, he claims that it was diluted because the transporting officers indicated that they did not have much information about his case and that the other officers in Buffalo would continue the questioning. [Doc. 98 at 7]. Hence, Defendant argues that the Magistrate Judge erred by not concluding that a fresh warning should have been given at the outset of the second interrogation.

Defendant points to *Michigan v. Mosley* and *United States v. Gray* to support his argument that questioning should not have been resumed without new *Miranda* warnings. The Court notes, however, that those cases address the circumstances under which "'a resumption of questioning' *after* a Defendant has invoked his right to remain silent 'is permissible.'" *United States v. Gray*, 771 F. App'x 976, 978 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 824, 205 L. Ed. 2d 495 (2020) (quoting *Michigan v. Mosley*, 423 U.S. 96, 101-04 (1975) (emphasis added). In other words, to begin

11

analyzing when, if at all, officers may resume interrogation of a suspect, Defendant must first in fact have effectively invoked his right to remain silent. This Court has already determined that Defendant did not do so here; thus, reliance on this case law is not determinative. Accordingly, Defendant's objection is overruled, and his statements should not be suppressed.

## IV. CONCLUSION

After conducting a de novo review of the record, this Court hereby adopts the recommendations of the Magistrate Judge in the R&R as the opinion and order of the Court. Consequently, Defendant's first Motion to Suppress is **GRANTED in part** and **DENIED in part**. [Doc. 53]. It is further ordered that Defendant's second Motion to Suppress be **DENIED**. [Doc. 54].

**IT IS SO ORDERED,** this 2nd day of March, 2021.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE